## Houston, Stanwood & Gamble Co. v. Bain.

(Decided February 27, 1914.)

Appeal from Kenton Circuit Court
(Common Law & Equity Division).

1. Fraud—Personal Injuries—Settlement.—The question of fraud in the obtaining from an injured employe of a writing compromis-

ing a claim for personal injury, is properly submitted to the jury where the proof for him shows that the settlement was for the time lost up to that time and his signature was obtained to the paper by the agent concealing from him the true nature of the paper he was signing and inducing him to sign it under a misapprehension.

2. Tender.—Where money is paid simply for wages lost up to the time of the settlement, no tender of the amount paid is necessary in order to maintain an action, but the amount so paid should be credited on the amount allowed.

S. D. ROUSE and WAITE & SCHINDEL for appellant.

B. F. GRAZIANI for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Joseph Bain was in the employ of the Houston, Stanwood & Gamble Company at work on a drill press; near where he was at work a boiler head about 72 inches in height and weighing about 700 pounds had been placed against the wall, so that it stood almost perpendicular. While Bain was at work on the drill press having his head bent down over his work, the boiler head fell on him, breaking one rib and injuring his knee and ankle. He brought this suit against his employer to recover for the injury. On the trial of the case there was a verdict and judgment in his favor for $500. The defendant appeals.

No objection is made to any ruling of the court in the admission or rejection of evidence, or to the instructions given by the court on the trial except it is insisted that the court ought to have instructed the jury peremptorily to find for the defendant on the ground that he had been paid $70 in full settlement for his injury, and could not maintain the action. The defendant introduced in evidence on the trial a writing signed by Bain by which he accepted the $70 in full settlement of his cause of action here sued on, and it introduced as a witness Frank A. Buchanan who was the agent of the indemnity company that insured the defendant against losses from injuries to its servants. Buchanan testified that Bain came to his office and wanted to know if he would pay his wages. He told him no, that he had nothing to do with that, and finally they agreed upon a stipulated settlement releasing the defendant from any liability that he paid Bain, and

that Bain signed the contract; that the $70 was paid by a draft signed by him and was paid in full settlement of the cause of action. Bain's testimony put in narrative form is as follows: "I called at Mr. Buchanan's office; Mr. Houston sent me there; he is the superintendent of the defendant. He told me to go over and see Mr. Buchanan and see if he would pay me straight time of eighty-five hours a week, which would be $17 a week at twenty cents an hour. Mr. Buchanan said: "I can't settle up in full with you now; you take this; I will pay you as soon as you get in shape to go to work, the balance of it. He paid me the $70; when he gave me the check, and before I signed the paper, he said: "This is partly your wages." There was no arrangement whatever between him and me by which I was to compromise for my injury at $70. The way I came to sign that paper was this: Mr. Buchanan walked over to me, I sitting in a chair like this; he had the paper in position like that with his forefinger and middle finger. He says, "Mr. Bain, you sign this, you can have a check for your part pay, when you are able to go to work come back to me, I will fix it with Mr. Houston so he can pay you the balance of the salary, 85 hours a week." I told him to let me see under it; I got up out of the chair. He says, "No, it ain't worth while, sign that, I have to go out in town." He said he would pay the balance when I was able to go to work; he wouldn't settle now in full for he didn't know how long I would be off, or how much longer I would be off. Nothing was said about a release or a compromise of my claim against the company. He did not tell me what was on that paper underneath. Mr. Houston before I went over there promised to pay me $950 as soon as I was able to go to work. Then he told me to go over to Mr. Buchanan and see him and see what he would do. I went over and seen him, if he would pay me straight salary at 85 hours a week. This was to come out of the $950. I was to get $950 and clear everything."

Houston did not testify on the trial. Buchanan's testimony and Bain's testimony gave entirely different versions of the transaction; but if Bain's testimony was true, he was paid $70 for the time then lost, and no settlement of his injury was made. If his testimony is true, his signature was obtained by Buchanan misleading him entirely as to the character of the paper he was signing,

and holding the paper in his hand so that Bain could not see it. If this testimony is true, the paper was obtained from Bain by fraud. This question was submitted to the jury by a very clear instruction, and they evidently believed Bain's version of the matter.

The $70 having been paid simply to cover wages lost up to that time and upon a promise to pay the balance when he was able to go to work, Bain was not required to tender the money to the defendant before bringing suit, and the court properly instructed the jury if they found for the plaintiff to credit the defendant by this sum.

Judgment affirmed.